**Mark GREEN and Corporate Accountability Research Group**

v.

**DEPARTMENT OF COMMERCE, Appellant.**

No. 79–1509.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 29, 1980.

Decided Feb. 26, 1980.

As Amended March 4, 1980.

See also, D.C., 489 F.Supp. 977.

Harland F. Leathers, Sp. Asst. to the Asst. Atty. Gen., Civ. Div., Dept. of Justice, Washington, D. C., with whom Carl S. Rauh, U. S. Atty., Washington, D. C., at the time brief was filed, Dennis Alton Dutterer, Asst. U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellant. Patricia G. Reeves, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for appellant.

David C. Vladeck, Washington, D. C., with whom Alan B. Morrison and Girardeau A. Spann, Washington, D. C., were on brief, for appellees.

Before WRIGHT, Chief Judge, and McGOWAN and MIKVA, Circuit Judges.

J. SKELLY WRIGHT, Chief Judge:

The Department of Commerce (Department) appeals from an order of the District Court in favor of plaintiff-appellee Mark Green[1] in this Freedom of Information Act (FOIA)[2] suit. Green seeks access to some 62,000 documents (boycott reports) submitted to the Department by United States exporters and related service organizations between January 1, 1965 and October 15, 1976. The reports concern requests by foreign nations for cooperation with boycotts against countries friendly to the United States. Pursuant to statute, 50 U.S.C. App. § 2403(c)(1) (1976), and Department regulations, 15 C.F.R. § 369.6 (1979), United States persons who receive a request to cooperate with an illegal boycott must file a report with the Department stating (1) the name of the United States firm receiving the request, (2) the date of the request, (3) the name of the country against which the boycott is directed, (4) the name and country of the party making the request, (5) the number of transactions to which the request was applicable, (6) the type of request received, (7) a general description of the commodities or data covered by the request and their total dollar value, and (8) a statement about whether the United States firm will comply with the request. The boycott report forms stated:

CONFIDENTIAL. Information furnished herewith is deemed confidential and will not be published or disclosed except as specified in Section 7(c) of the Export Administration Act of 1969 as amended (50 USC app. 2406(c)).

Joint Appendix (JA) 104. Prior to amendment in 1977,[3] Pub.L. No. 95-52 §§ 113(a), 201(c), Section 7(c) of the Export Administration Act provided:

No department, agency, or official exercising any functions under this Act

---

**1.** Mr. Green is the director of the Corporate Accountability Research Group, a nonprofit corporation which is also a plaintiff-appellee in this case.

**2.** 5 U.S.C. § 552 (1976).

**3.** The 1977 amendment provided that the information could be given to Congress, but that Congress would not disclose it unless the full committee receiving the information determined that withholding it would be contrary to the national interest. *See* 50 U.S.C. App. § 2406(c) (Supp. I 1977).

[sections 2401 to 2413 of this Appendix] shall publish or disclose information obtained hereunder which is deemed confidential or with reference to which a request for confidential treatment is made by the person furnishing such information, unless the head of such department or agency determines that the withholding thereof is contrary to the national interest.

50 U.S.C. App. § 2406(c) (1976) (brackets in original).

On March 14, 1975 plaintiffs-appellees filed a request with the Department under FOIA for "all records in the possession of the Department of Commerce which relate to any request, demand or other pressure exerted in an effort to obtain or deter cooperation in a restrictive trade or business practice relating to an international boycott." JA 315. The Department refused to release the requested documents, and this suit followed. In the District Court the Department asserted two defenses to the suit under FOIA: Exemption 3 [4] (materials "specifically exempted from disclosure by statute") and Exemption 4 [5] ("trade secrets and commercial or financial information obtained from a person and privileged or confidential").

Following this court's decision in *American Jewish Congress v. Kreps,* 574 F.2d 624 (D.C.Cir.1978), which concerned an Exemption 3 claim identical to the one at bar,[6] the District Court rejected the Department's defense based on Exemption 3. In addition, the District Court rejected a blanket exemption for the boycott reports under Exemption 4. It then granted "judgment" to the plaintiffs in the case, subject to certain conditions: in order to protect the confidentiality of any sensitive matters in the reports, the court ordered that the companies that submitted boycott reports be notified that the reports would be disclosed, so that they could object to specific disclosures that might cause them competitive injury.[7] Only after the submitting companies had responded would the court make a final determination on release of any documents. The Department appealed from this order, and the District Court stayed further proceedings pending disposition of the appeal.

Appellees moved in this court for dismissal of the appeal as not being a final judgment and, in the alternative, for summary affirmance on the Exemption 3 issue. A motions panel of this court denied the motion to dismiss, but granted summary affirmance on the Exemption 3 claim on the strength of *American Jewish Congress v. Kreps, supra,* 574 F.2d 624.[8] Accordingly, only the Exemption 4 claim remains at issue.

As a preliminary matter, this court must determine whether we have jurisdiction to hear this appeal. Although appellees originally moved for dismissal on jurisdictional grounds, they now defend the appealability of the order. Both parties stated at oral argument that an appeal was

---

4. 5 U.S.C. § 552(b)(3) (1976).

5. *Id.* § 552(b)(4).

6. The court held that § 7(c) of the Export Administration Act is not a barrier to disclosure under Exemption 3 because it leaves too much discretion to disclose in the hands of the Department. *American Jewish Congress v. Kreps,* 574 F.2d 624 (D.C.Cir.1978).

7. The District Court order read in relevant part:
   In accordance with the Memorandum Opinion issued by the Court, it is, this 30th day of March, 1979,
   ORDERED, that the defendant's claim of exemption under 5 U.S.C. § 552(b)(3) & (4), be, and the same hereby is, denied; and it is
   FURTHER ORDERED, that the defendant confer with the plaintiff in order to formulate a mutually agreeable method of providing notice of disclosure and that the parties submit to the Court, for its approval, proposed notice(s) within twenty days after the entry of this order; and it is
   * * * * * *
   FURTHER ORDERED, that judgment be, and the same hereby is, granted to plaintiffs, subject to such exceptions as may arise as a result of objections made in response to the notice of disclosure.
   JA 319.

8. *Green v. Dep't of Commerce,* D.C.Cir. No. 79–1509 (July 16, 1979) (order denying motion to dismiss and granting summary affirmance on Exemption 3 issue).

properly taken under 28 U.S.C. § 1291 (1976) or under *id.* § 1292(a)(1). The agreement of the parties, however, does not settle the question. Parties may not confer jurisdiction upon the court by consent. *Mansfield, Coldwater & Lake Michigan R. Co. v. Swan,* 111 U.S. 379, 382, 4 S.Ct. 510, 511, 28 L.Ed. 462 (1884);[9] rather, it is the duty of this court to dismiss whenever it becomes apparent that we lack jurisdiction. *Potomac Passengers Ass'n v. Chesapeake & Ohio R. Co.,* 520 F.2d 91, 95 & n.22 (D.C. Cir. 1975). For reasons which follow, we conclude that the order of the District Court in this case is not a final judgment, and we therefore dismiss this appeal.

## I

Subject to certain exceptions, the federal Courts of Appeals are limited in their jurisdiction to review of "final decisions of the district courts * * *." 28 U.S.C. § 1291 (1976).[10] The order under review here is not such a "final decision." It cannot be characterized as "final" in the sense of being an order that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). On the contrary, the District Court has not yet determined whether to order release of any documents sought by appellees. The court has merely heard and rejected two of the Department's legal defenses.

■ Left to be decided is the dispositive issue: whether any of the documents qualify for Exemption 4 as being likely "to cause substantial harm to the competitive position of the person from whom the information was obtained." *Nat'l Parks & Conservation Ass'n v. Morton,* 498 F.2d 765, 770 (D.C.Cir. 1974). Until the court makes this determi-

nation, it will not order any documents released; it will issue no final judgment. We must remember that the plaintiffs did not seek a ruling on an abstract legal question or an order notifying submitters of boycott reports that they are to be released absent objection: the plaintiffs sought disclosure of the documents.

Ambiguous language in the District Court order cannot make appealable a decision that is not. The final paragraph of the order read that it is:

FURTHER ORDERED, that judgment be, and the same hereby is, granted to plaintiffs, subject to such exceptions as may arise as a result of objections made in response to the notice of disclosure.

JA 319. This "judgment" is "subject to such exceptions" that the plaintiffs may receive none—or all—of the relief they seek. It is not "final" in any practical sense of the word.

A decision on the appeal at this stage of the proceeding might well be unnecessary; alternatively, it might not suffice to settle all the legal issues of the case. After the submitters of the boycott reports respond to the notification, the District Court might decide that the materials are "confidential" within the meaning of Exemption 4, in which case the Department would not need to appeal. Or the issues might be sufficiently narrowed to permit the parties to reach a settlement. Or there might be no objection to release of the reports, in which case the Exemption 4 claim might be untenable. In any of these events, we would have decided hypothetical questions and wasted appellate resources by intervening at this stage. On the other hand, were we to decide this case in favor of the appellees, further legal issues over the disposition of

9. The earlier action of the motions panel does not free this court from the independent duty to decide whether we have jurisdiction. As we held in *Potomac Passengers Ass'n v. Chesapeake & Ohio R. Co.,* 520 F.2d 91, 95 n.22 (D.C.Cir.1975), the doctrine of "law of the case" does not apply to the fundamental question of subject matter jurisdiction.

10. Interlocutory review is available under limited circumstances upon certification by the District Court pursuant to Fed.R.Civ.P. 54(b) or 28 U.S.C. § 1292(b) (1976), or of right pursuant to *id.* § 1292(a). In this case there was no certification by the District Court; therefore, the discretionary modes of interlocutory review are inapplicable. The Department's § 1292(a) claim is considered *infra.*

particular documents might later arise,[11] requiring a return to this court for a second appeal. In any event, so long as this court maintains jurisdiction over the case, progress toward a final judgment in the District Court has ground to a halt. The purpose of the final judgment rule—to avoid piecemeal review and the attendant "mischief of economic waste and of delayed justice," *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 124, 65 S.Ct. 1475, 1478, 89 L.Ed. 2092 (1945)—would be defeated by our assuming jurisdiction in this case.

## II

▮ In its opposition to appellees' motion to dismiss the Department asserted three grounds on which appellate jurisdiction might be justified. First, it asserted the collateral order exception of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Essentially, the Department argued that its right to a blanket exemption would be lost, perhaps irreparably, unless a direct appeal is allowed. It observed that if all of the submitters of boycott reports objected to disclosure, then its appeal of the denial of the blanket exemption would be mooted. Even on the Department's logic, however, it does not follow that the Department has a right of direct appeal. It is highly unlikely that all of the submitting companies will

react in the same way, thereby mooting the appeal. Moreover, and more fundamentally, a party does not have the right to compel an appellate decision on a legal point unless it is necessary to his case. If the Department prevails because of the objections to disclosure lodged by the submitting companies, then it has no legitimate right to appeal the denial of a blanket exemption.

The Supreme Court, in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978), recently reiterated the strict test that determines the "small class" of orders falling within the *Cohen* exception: "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." The issue in this case is certainly not "separable from, and collateral to, rights asserted in the action * *." *Cohen v. Beneficial Industrial Loan Corp.*, *supra*, 337 U.S. at 546, 69 S.Ct. at 1225. The question whether the Department was entitled to a blanket exemption under Exemption 4 is intertwined with, indeed part of, the main cause of action. This is in sharp contrast to the appealable order in *Cohen*, which "did not make any step toward final disposition of the merits of the case and [would] not be merged in final judgment." *Id.*[12]

11. Appellees claim that they have "repeated[ly] offer[ed] to voluntarily forego their claims to any report for which the submitting company makes an objection to disclosure," appellees' brief at 26, and they repeated the offer during oral argument in this court. Appellees' offer, however, should not affect the jurisdiction of this court. Further issues, not predictable at this time, may later appear in the litigation. It is better to adhere to the final judgment rule than to rely on statements of counsel about the future course of the litigation.

12. The Department's reliance on this court's decision in *Gueory v. Hampton*, 510 F.2d 1222 (D.C.Cir.1974), is misplaced. *Gueory* held, in accordance with the usual practice of the federal courts, that an appeal may be taken under 28 U.S.C. § 1291 from an order of a District Court in an administrative review case, even though the matter may be remanded to an agency for further proceedings. In such a case the District court order is genuinely final. It com-

pletes the litigation in the courts; the matter might never return to the courts. In our case, however, the matter remains in the District Court pending a decision on whether the plaintiffs are entitled to the relief they request. Until the District Court finishes its business, we should not intervene.

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d (1974)—not cited by the Department—is superficially similar to the case at bar, but is also distinguishable. In *Eisen* the defendant in a class action suit was ordered to pay 90% of the costs of notifying the class of the suit—approximately $19,548. The Supreme Court held this order appealable under the collateral order doctrine. It might be thought that the notification requirement in the case at bar is similarly appealable. The crucial difference between the cases, however, is that the *Eisen* order "involved a collateral matter unrelated to the merits of petitioner's claims." 417 U.S. at 172, 94 S.Ct. at 2150. As we have

Second, the Department claimed a right to appeal under *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 154, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964), because the issue is "fundamental to the further conduct of the case." However, such a broad application of the *Gillespie* dictum would vitiate the final judgment rule altogether. This is hardly an advisable course in view of the growing demands on the federal appellate courts and the Supreme Court's repeated insistence on adherence to the congressionally-mandated final judgment rule, *e.g., Coopers & Lybrand v. Livesay, supra,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351. No federal appellate court, to our knowledge, has ever followed the *Gillespie* dictum in a case in which the appeal could not be justified on the basis of some other, narrower, policy demanding deviation from the finality rule.[13] We shall not do so here.

■ Finally, the Department claimed that the order is appealable under 28 U.S.C. § 1292(a)(1) as an injunction. This argument seems to be based on the erroneous belief that the District Court order "impliedly requires disclosure of documents under the FOIA."[14] As we have pointed out, there has not *yet* been any requirement— implied or otherwise—of disclosure of documents. Alternatively, the Department characterized the order as "injunctive in nature"[15] because it requires the Department to undertake notification of the persons who submitted boycott reports. This is not, however, an "injunction" for purposes of Section 1292(a)(1): it does not affect the rights or behavior of parties outside of the litigation, and does not differ from any other time-consuming requirement imposed on litigants by courts in the interest of obtaining full information.[16] The Supreme Court has recently said that Section 1292(a)(1) is a "narrow" exception to the finality rule, "keyed to the 'need to permit litigants to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence.'" *Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478, 480, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1978), *quoting Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955). The consequences of this order are by no means serious enough to fall within this exception.

### III

■ In an FOIA case a "final decision" is an order by the District Court requiring release of documents by the Government to the plaintiff, or an order denying the plaintiff's right to such release. The case at bar does not present an appealable "final order," but rather an interlocutory order issued in the course of a continuing proceeding. By dismissing this appeal we will enable the District Court to complete its work without further interruption. Perhaps the result of the District Court proceeding will make an appeal from final judgment unnec-

---

shown, the order now under review was an integral step in making a final decision on the merits. The burden of notifying the submitting companies is more closely analogous to the expense of proceeding with discovery and trial after denial of a motion for summary judgment—clearly not appealable—than to the order in *Eisen.*

**13.** Again, the Department relied on cases concerning remands to administrative agencies. *See* note 12 *supra.*

**14.** Appellant's Opposition to Appellees' Motion to Dismiss or in the Alternative for Summary Affirmance at 6 (filed June 22, 1979).

**15.** *Id.*

**16.** The Department mistakenly relied on this court's decision in *E. P. Hinkel & Co. v. Manhattan Co.,* 506 F.2d 201 (D.C.Cir.1974). In *Hinkel* the court held that in reviewing the grant of an injunction under 28 U.S.C. § 1292(a)(1) the appellate court has jurisdiction to review the summary judgment underlying the injunction—even though the issue of injunctive relief had become moot, and the only remaining relevance of the summary judgment was to an additional claim for damages. In the case at bar, in contrast, there is no injunction, and thus no basis for appellate jurisdiction.

essary; perhaps it will sharpen and narrow the legal issues that must eventually be decided by an appellate court. The parties may regret that they cannot now obtain a ruling on the merits after they have prepared for this appeal, but we believe that in the long run close adherence to the final judgment rule is better calculated to produce considered and expeditious justice.

The appeal is

*Dismissed.*